**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| **HARKAMAL SINGH,** | ) | |
| | ) | |
| **Petitioner,** | ) | |
| | ) | |
| **v.** | ) | **Case No. CIV-26-1194-J** |
| | ) | |
| **ROBERT CERNA,[1] et al.,** | ) | |
| | ) | |
| **Respondents.** | ) | |

**REPORT AND RECOMMENDATION**

Petitioner Harkamal Singh, a noncitizen[2] and Indian national proceeding with counsel, filed a Petition for Writ of Habeas Corpus ("Petition"), Doc. 1, challenging under 28 U.S.C. § 2241 his detention by U.S. Immigration and Customs Enforcement ("ICE"). United States District Judge Bernard M. Jones, II referred this matter to the undersigned Magistrate Judge in accordance with 28 U.S.C. § 636(b)(1)(B)-(C). Doc. 3. The undersigned set an expedited briefing schedule, Doc. 10, and the Petition is at issue. For the reasons set forth below, the undersigned recommends that the Court grant the Petition, Doc. 1, in part and order Respondents to immediately release Petitioner subject to the conditions of his prior release on bond.

---

[1] Chris Gantt was announced as Warden of Cimarron Correctional Facility in May 2026. He replaces Scarlet Grant and is substituted as the proper respondent pursuant to Federal Rule of Civil Procedure 25(d). David Venturella was announced as Acting Director of U.S. Immigration and Customs Enforcement on June 1, 2026. He replaces Todd Lyons and is substituted as the proper respondent pursuant to Rule 25(d).

[2] Unless quoting, this Report and Recommendation "uses the term 'noncitizen' as equivalent to the statutory term 'alien.'" *Nasrallah v. Barr*, 590 U.S. 573, 578 n.2 (2020) (citing 8 U.S.C. § 1101(a)(3)).

## I. <u>Background</u>

Petitioner, a citizen of India, entered the United States on or about January 25, 2016. Pet. at 4-5; Doc. 14-7 at 3 (Petitioner's Form I-213). Shortly thereafter, ICE encountered and detained Petitioner. Pet. at 5. On February 20, 2016, ICE placed Petitioner into removal proceedings before the Immigration Court pursuant to 8 U.S.C. § 1229a through the issuance of a Notice to Appear, and charged him with being inadmissible under 8 U.S.C. § 1182(a)(6)(A)(i) as someone who entered the United States without inspection. Pet. at 5-6; Doc. 1-1 at 1 (Notice to Appear); Doc. 14-7 at 3.

On April 12, 2016, an Immigration Judge ("IJ") ordered Petitioner released from custody on a $30,000 bond. Pet. at 5; Doc. 14-2 at 6 (Bond Order). Petitioner alleges he has "fulfilled the conditions of his release." Pet. at 5; *see also id.* at 6 (describing Petitioner's "compliance while released, including attending his court hearings in his removal proceedings"). Respondents do not contest this assertion.

After his release on bond, Petitioner received an employment authorization and filed an asylum application. *Id.* at 5; Doc. 1-6 at 1 (Employment Authorization); Doc. 14-3 at 1 (Asylum Application). On January 17, 2020, an IJ denied Petitioner's asylum application and ordered him removed to India. Pet. at 5; Doc. 14-6 at 11 (Removal Order). Petitioner appealed this decision; his appeal remains pending. Pet. at 5; Resp. at 2; Doc. 1-4 at 1 (Immigration Court Docket). Therefore, his removal order is not yet final under 8 C.F.R. § 1241.1.

On May 9, 2026, the Oklahoma Highway Patrol ("OHP") stopped Petitioner, who was working as a commercial truck driver, to inspect his vehicle. Pet. at 6; Doc. 1-5 at 1

(Driver/Vehicle Examination Report). While OHP's inspection did not uncover any violations, OHP detained Petitioner and subsequently transferred him to ICE custody. Pet. at 6; Doc. 14-7 at 3.

Respondents contend Petitioner is detained pursuant to 8 U.S.C. § 1225(b)(2)(A). Resp. at 6. It is not clear whether Petitioner has requested a bond hearing. *See* Pet. at 10 (asserting he "has no administrative remedies to exhaust" and "[f]utility is an exception to the prudential exhaustion requirement"). Such a request, though, would likely be futile because all IJs are subject to the binding precedent of *Matter of Yajure Hurtado*, 29 I & N Dec. 216 (BIA 2025), which holds those noncitizens who entered the country without admission or parole are ineligible for a bond hearing.

When Petitioner filed his Petition, he was detained at Cimarron Correctional Facility in Cushing, Oklahoma. Pet. at 7. He remains detained there. *See* ICE Online Detainee Locator System, *at* https://locator.ice.gov/odls/#/results (last visited August 4, 2026).

## II. <u>**Petitioner's Claims**</u>

Petitioner asserts six counts in his Petition.

- **Count I: Violation of the Immigration and Nationality Act ("INA").** Petitioner alleges his continued detention under 8 U.S.C. § 1225(b)(2) is unlawful and violates the INA because that provision does not apply to noncitizens, like him, who previously had been granted bond pursuant to § 1226(a) and have no change in circumstances. Pet. at 19-20.

- **Count II: Violation of Due Process**. Petitioner alleges his continued detention without an individualized custody determination violates his right to procedural due process. *Id*. at 20-22.

- **Count III: Violation of the Administrative Procedure Act ("APA")**. Petitioner alleges his detention without an individualized

custody determination is arbitrary and capricious in violation of the APA. *Id.* at 22-24.

- **Count IV: Violation of Equal Protection**. Petitioner alleges his detention without an individualized bond hearing, when similarly situated noncitizens have received one, violates his right to equal protection. *Id.* at 24-26.

- **Count V: Violation of the Suspension Clause**. Petitioner alleges the lack of a meaningful opportunity to challenge his detention before the Immigration Court violates the Suspension Clause. *Id.* at 26-28.

- **Count VI: Violation of the *Accardi* Doctrine**. Petitioner alleges ICE's disregard for its own regulations violates the principle that executive branch agencies must follow their own binding regulations. *Id.* at 28-30.

He asks the Court to declare his continued detention unlawful and "order [his] immediate release from ICE custody." Pet. at 30-31. Petitioner also requests an award of attorney fees and costs under the Equal Access to Justice Act ("EAJA").[3] *Id*. at 31.

## III. <u>Standard of Review</u>

To obtain habeas corpus relief, Petitioner must show that he is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). "Challenges to immigration detention are properly brought directly through habeas." *Soberanes v. Comfort*, 388 F.3d 1305, 1310 (10th Cir. 2004) (citing *Zadvydas v. Davis*, 533 U.S. 678, 687-88 (2001)).

[3] To the extent Petitioner may be entitled to EAJA fees and costs as a prevailing party, he must seek those separately after a final judgment. 28 U.S.C. § 2412(d)(1)(B). Thus, the Court need not address this request at this juncture.

## IV. Analysis

### A. Section 1226(a) applies to Petitioner's detention.

The two sections of the INA at issue that govern detention of noncitizens pending removal proceedings are 8 U.S.C. §§ 1225 and 1226. Section 1225(a)(1) describes an "applicant for admission" as "an alien present in the United States who has not been admitted or who arrives in the United States." *Id.* § 1225(a)(1) (citation modified). Under § 1225(b)(2)(A), "in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained." If Petitioner is detained under § 1225(b)(2)(A), he is not entitled to a bond hearing. On the other hand, § 1226(a) more generally authorizes detention of a noncitizen pending removal proceedings and entitles the noncitizen to a bond hearing. *See Jennings v. Rodriguez*, 583 U.S. 281, 306 (2018) ("Federal regulations provide that aliens detained under § 1226(a) receive bond hearings at the outset of detention." (citing 8 C.F.R. §§ 236.1(d)(1), 1236.1(d)(1))).

Petitioner alleges his continued detention under § 1225(b)(2) is unlawful and violates the INA. Pet. at 11-19. He further alleges § 1226(a) governs the detention of noncitizens, like him, "who have already entered and were residing in the United States at the time they were apprehended." Pet. at 19. Respondents maintain Petitioner is properly detained under § 1225(b)(2)(A). Resp. at 6.

The Tenth Circuit recently rejected the statutory interpretation of § 1225(b)(2) as urged by Respondents and applied § 1226(a) to govern detention of noncitizens like Petitioner. *Santillan Quiroz v. Mullin*, 180 F.4th 1226, 1235-49 (10th Cir. 2026). In

*Santillan Quiroz*, the Tenth Circuit concluded "those who entered the United States without admission and who have lived here since are categorically unable to seek admission while they remain in the country." *Id.* at 1239 (citation modified). Accordingly, "noncitizens who entered the United States and were thereafter detained in the interior of the country are usually subject to § 1226(a) (and thus eligible for bond), not § 1225(b)(2)(A)." *Id.* at 1237. Therefore, based on Tenth Circuit precedent and this Court's prior reasoning in *Coreas v. Noem*, No. CIV-26-151-J, 2026 WL 541151, at *2 (W.D. Okla. Feb. 26, 2026), the undersigned recommends the Court apply § 1226(a) to govern Petitioner's current detention. *See Imami v. Lyons*, No. CIV-26-566-J, 2026 WL 1896142, at *1-2 (W.D. Okla. July 1, 2026) (holding in accordance with *Santillan Quiroz* that a similarly situated petitioner is entitled to a bond hearing under § 1226(a)).[4]

Further, Petitioner's application for asylum does not change the analysis or render him "seeking admission" and thereby subject to § 1225(b)(2)(A). *Santillan Quiroz*, 180 F.4th at 1239 (holding a noncitizen "cannot make a present request for permission to enter

[4] This conclusion is also in accord with persuasive authority in the Second, Sixth, Seventh, Ninth, and Eleventh Circuits, which rejected Respondents' statutory interpretation of § 1225(b)(2). *See Rodriguez Vazquez v. Bostock*, No. 25-6842, --- F.4th ----, 2026 WL 2196424, at *26 (9th Cir. July 30, 2026); *Cirrus Rojas v. Olson*, No. 25-3127, --- F.4th ---, 2026 WL 2198315, at *2 (7th Cir. July 30, 2026); *Hernandez Alvarez v. Warden, Fed. Det. Ctr. Miami*, 175 F.4th 1258, 1285 (11th Cir. 2026); *Lopez-Campos v. Raycraft*, 175 F.4th 713, 722 (6th Cir. 2026); *Cunha v. Freden*, 175 F.4th 61, 69 (2d Cir. 2026). In contrast, the Fifth and Eighth Circuits recently applied § 1225 to similar habeas challenges, agreeing with Respondents' position. *Avila v. Bondi*, 170 F.4th 1128, 1134-38 (8th Cir. 2026); *Buenrostro-Mendez v. Bondi*, 166 F.4th 494, 498, 502-08 (5th Cir. 2026). Respondents have filed a petition for a writ of certiorari to the Supreme Court. *See* Cert. Pet., *Raycraft v. Lopez-Campos*, No. 25-1415 (filed June 22, 2026); Cert. Pet., *Cunha v. Freden*, No. 26-104 (filed July 23, 2026).

the United States, lawfully or otherwise, once he or she has already entered" and "the only time a noncitizen can be said to be seeking admission is when he is seeking to enter the United States at the border" (citation modified)).

### B. The revocation of Petitioner's bond violated the INA and its implementing regulations.

Ordinarily, the conclusion that a noncitizen's detention is governed by § 1226(a) ends the habeas analysis. *See, e.g.*, *Coreas v. Noem*, No. CIV-26-151-J, 2026 WL 541151, at *2 (W.D. Okla. Feb. 26, 2026) (declining to decide the merits of a petitioner's due process claim when granting a bond hearing pursuant to § 1226(a)). However, in the rare circumstances when a noncitizen was previously released on bond by an IJ pursuant to § 1226(a), as in this case,[5] § 1226(b) is also implicated. Under § 1226(b), the Secretary of Homeland Security may "revoke a bond or parole authorized under subsection (a), rearrest the alien under the original warrant, and detain the alien." Section 1226(b) is implemented by 8 C.F.R. §§ 236.1(c)(9) and 1236.1(c)(9), which explain that when a noncitizen who,

> having been arrested and taken into custody, has been released, such release may be revoked at any time in the discretion of the district director, acting district director, deputy district director, assistant district director for investigations, assistant district director for detention and deportation, or officer in charge (except foreign), in which event the alien may be taken into physical custody and detained. If detained, unless a breach has occurred, any outstanding bond shall be revoked and canceled.

---

[5] The parties do not dispute that Petitioner's 2016 detention and release on bond were governed by § 1226(a). *See* Pet. at 5-6 ("Petitioner was . . . subject to discretionary detention under Section 236."); Doc. 14-2 at 6 (bond order citing the regulation implementing § 1226).

Further, federal courts have consistently relied on longstanding Board of Immigration Appeals precedent and found the broad discretion that § 1226(b) grants DHS to re-detain noncitizens previously released on bond is subject to "an important implicit limitation": "where a previous bond determination has been made by an immigration judge, no change should be made . . . absent a change of circumstance." *Saravia v. Sessions*, 280 F. Supp. 3d 1168, 1197 (N.D. Cal. 2017) (quoting *Matter of Sugay*, 17 I & N Dec. 637, 640 (B.I.A. 1981)). In this District, Judge Heaton recently applied the same principle. *See Skutar v. Mullin*, No. CIV-26-0036-HE, Doc. 15 at 2-3 (W.D. Okla. Apr. 24, 2026) (ordering a similarly situated petitioner's release after concluding "while the Attorney General has authority to revoke bond at any time under 8 U.S.C. § 1226(b), if an immigration judge has determined the noncitizen should be released, the DHS may not re-arrest that noncitizen absent a change of circumstance") (citation modified); *see also, e.g.*, *Hernandez-Parrilla v. De Anda-Ybarra*, No. 25-CV-01224, 2025 WL 3632769, at *5 (D.N.M. Dec. 15, 2025); *Salcedo Aceros v. Kaiser*, No. 25-cv-06924, 2025 WL 2637503, at *1 (N.D. Cal. Sept. 12, 2025).[6] Thus, where an IJ has previously granted a noncitizen bond under § 1226(a), ICE may only revoke that bond when it can show there are changed circumstances, and only certain immigration officials may exercise that discretion.

[6] A few courts have declined to read the change-in-circumstances requirement into § 1226(b). *E.g.*, *Garcia v. Jamison*, No. 26-2214, 2026 WL 1122608, at *3 (E.D. Pa. Apr. 24, 2026); *O.F.C. v. Almodovar*, No. 25-cv-9816, 2026 WL 74262 (S.D.N.Y. Jan. 9, 2026); *Salvador F.-G. v. Noem*, No. 25-CV-0243, 2025 WL 1669356, at *9 (N.D. Okla. June 12, 2025).

Here, there is no evidence in the record that an ICE district director, acting district director, deputy district director, assistant district director for investigations, assistant district director for detention and deportation, or officer in charge made the decision to revoke Petitioner's parole. Instead, Petitioner was detained after an ICE Supervisory Detention and Deportation Officer issued a warrant for his arrest. Doc. 14-7 at 1. Moreover, the record does not reflect any material changes in Petitioner's circumstances; nor do Respondents argue any such changes have occurred. Petitioner alleges that since the IJ released him on bond more than a decade ago, he has complied with conditions of his release, maintained employment, and pursued his case before the Immigration Court. Pet. at 5-6. There is no indication that during this time, he has become a flight risk or a danger to his community.

For these reasons, the undersigned concludes ICE violated § 1226(b) and its implementing regulations when it detained Petitioner on May 9, 2026.

### C. The revocation of Petitioner's bond violated his procedural due process rights.

Because § 1226(b) governs the revocation of Petitioner's bond, he is owed the due process provided to him under the statute. The Fifth Amendment's Due Process Clause protects all persons within the United States from being "deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V. It applies to noncitizens within the United States "whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas*, 533 U.S. at 693. In the civil immigration detention context, courts consistently apply the test from *Mathews v. Eldridge*, 424 U.S. 319 (1976), to evaluate the

process owed a noncitizen. *See, e.g., Hernandez-Lara v. Lyons*, 10 F.4th 19, 27-39 (1st Cir. 2021) (applying *Mathews* to due process challenges to prolonged detention under § 1226(a)); *Velasco Lopez v. Decker*, 978 F.3d 842, 851-55 (2d Cir. 2020) (same).

The *Mathews* test includes three factors: (1) "the private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews*, 424 U.S. at 335. All three factors weigh in Petitioner's favor.

First, Petitioner has a strong liberty interest in being free from physical detention. This is "the most significant liberty interest there is—the interest in being free from imprisonment." *Velasco Lopez*, 978 F.3d at 851 (citing *Hamdi v. Rumsfeld*, 542 U.S. 507, 529 (2004)). Because freedom from restraint is "at the core of the liberty interest protected by the Due Process Clause, commitment for any purpose constitutes a significant deprivation of liberty that requires due process protection." *Foucha v. Louisiana*, 504 U.S. 71, 80 (1992) (citation modified). "Congress may make rules as to aliens that would be unacceptable if applied to citizens," *Demore v. Kim*, 538 U.S. 510, 522 (2003), but that power remains subject to "important constitutional limitations," *Zadvydas*, 533 U.S. at 695. It does not eliminate Petitioner's significant interest in being free from detention. *See, e.g., Diaz v. Noem*, No. 26-CV-00782, 2026 WL 733587, at *3 (D. Colo. Mar. 16, 2026) (concluding the first *Mathews* factors supports finding a due process violation where

petitioner "is being held in a detention facility that strongly resembles penal confinement, is away from his family, and is unable to maintain his employment" (citation modified)).

Second, the risk of erroneous deprivation is high here, because an IJ has already granted Petitioner bond, presumably on a finding that he posed neither a risk of flight nor a danger to the community. Doc. 14-2 at 6. Petitioner's re-detention "without notice or a hearing" creates a "considerable" risk of erroneous deprivation because it omits necessary "procedural safeguards to determine whether the revocation of his release and bond were justified." *Amefia v. Grant*, No. CIV-26-975-R, 2026 WL 2113994, at *4 (July 22, 2026) (R&R). The risk is compounded by Respondents' current position to afford Petitioner no bond hearing. *See, e.g., Montero Cordova v. Noem*, No. 26-CV-00526, 2026 WL 867689, at *9 (D.N.M. Mar. 30, 2026) (finding the second *Mathews* factor favors petitioner because "the risk of erroneous deprivation will remain high" "without the opportunity to have the hearing to which Petitioner is entitled" under § 1226(a) and noting "a bond hearing before a neutral immigration judge will provide immense value as an additional safeguard" (citation modified)); *Orellana v. Noem*, 807 F. Supp. 3d 745, 754 (W.D. Ky. 2025) ("A re-detention, without any individualized assessment, leads to a high risk of erroneous deprivation of an individual's liberty interest."). This is especially true given that Petitioner's detention was not deemed necessary for more than ten years.

Finally, the Court must consider the government's interest, including any fiscal or administrative burdens. *Mathews*, 424 U.S. at 335. While "control over matters of immigration is a sovereign prerogative" and the "government's interest in efficient administration of immigration laws at the border is weighty," *Landon v. Plasencia*, 459

U.S. 21, 34 (1982) (citation modified), such interests in detaining Petitioner without procedural safeguards do not outweigh his liberty interest or risk of erroneous deprivation. *See, e.g.*, *Amefia*, 2026 WL 2113994, at *4 ("[T]he Court can discern no significant administrative or fiscal burden associated with placing the burden on the Government to follow its own laws and regulations.").

For these reasons, Petitioner's re-detention without notice and a pre-detention hearing violated his due process rights.

**D. The proper remedy is release.**

Petitioner seeks an order ensuring his "immediate release from ICE custody." Pet. at 31. When "§ 1226 governs Petitioner's detention, the due process owed to Petitioner is that provided for in § 1226." *Velasquez Salazar v. Dedos*, 806 F. Supp. 3d 1231, 1241 (D.N.M. 2025). Typically, that process is "an individualized bond hearing before an IJ." *Id.* But where a noncitizen has previously been granted bond by an IJ and is entitled to remain at liberty absent changed circumstances, matters are different.

Petitioner's re-detention without changed circumstances justifying the revocation of his IJ-granted bond violated the INA, ICE regulations, and his procedural due process rights. When confronted with similarly situated noncitizens, Judges in this District have found the noncitizens are entitled to immediate release. *See Skutar*, No. CIV-26-0036-HE, Doc. 15 at 2-3 (ordering a noncitizen released from custody where "the record contain[ed] no facts which show[ed] any change in circumstances since petitioner's initial release" and there was no indication the petitioner posed a flight or safety risk); *see also Singh v. Grant*, No. CIV-26-289-R, 2026 WL 1099500, at *5 (W.D. Okla. Apr. 22, 2026) (R&R)

(recommending "release . . . from detention" where ICE "summarily revoked [a noncitizen's] bond"), *adopted*, 2026 WL 1483557, at *2 (W.D. Okla. May 27, 2026) ("The Magistrate issued a well-reasoned opinion finding ICE failed to comply with procedures. Upon review, and considering the lack of more specific arguments from Respondents, the Court agrees with the Magistrate."); *Amefia*, 2026 WL 2113994, at *5 (recommending "immediate release" for a noncitizen whose IJ-issued bond was improperly revoked).

This approach of immediate release aligns with the scope of habeas remedy ordered by many out-of-district courts considering what relief to provide noncitizens whose IJ-ordered bond was improperly revoked. *E.g.*, *B.F. v. Mullin*, No. 26-cv-2992, 2026 WL 2198915, at *5 (D. Minn. July 24, 2026); *Peña Becerra v. Sparks*, No. 26-cv-00212, 2026 WL 915439, at *7 (D. Utah Apr. 3, 2026); *Singh v. Hale*, No. 26-cv-53, 2026 WL 765623, at *5 (D. Vt. Mar. 18, 2026); *Hernandez-Parrilla*, 2025 WL 3632769, at *7; *accord Galindo Vega v. Warden*, No. 26-cv-03604, 2026 WL 1707804, at *1 (E.D. Cal. June 12, 2026) (finding a bond hearing, rather than immediate release, was the appropriate remedy where evidence the record indicated changed circumstances).

Accordingly, the undersigned recommends that Petitioner be immediately released from detention subject to the conditions of his prior bond.[7]

[7] In ordering similar relief, Judges in other districts have acknowledged that ICE retains the power to re-detain noncitizens previously released on IJ-ordered bond where it proves by clear and convincing evidence at a pre-detention hearing before an IJ that the noncitizen's circumstances have changed in a manner justifying the revocation of the previous bond. *E.g.*, *Peña Becerra*, 2026 WL 915439, at *7; *Hernandez-Parrilla*, 2025 WL 3632769, at *7; *dos Santos v. Noem*, No. 25-CV-12052, 2025 WL 2370988, at *9 (D. Mass. Aug. 14, 2025); *Ortega v. Bonnar*, 415 F. Supp. 3d 963, 970 (N.D. Cal. 2019); *cf.*

**E. The Court should decline to address Petitioner's remaining claims.**

Petitioner also argues his continued detention without a bond hearing violates the INA, the APA, his Fifth Amendment equal protection rights, the Suspension Clause, and the *Accardi* doctrine. Pet. at 19-30. If the Court grants Petitioner's requested relief for release, the undersigned recommends the Court decline to decide the merits of Petitioner's remaining claims based on his continued detention. *See, e.g.*, *Coreas*, 2026 WL 541151, at *2 (declining to decide the merits of a petitioner's due process claim when granting a bond hearing pursuant to § 1226(a)).

At most, Petitioner's due process claims based on his continued detention entitle him to a bond hearing pursuant to § 1226(a) at which he will bear the burden of proof. *See Imami*, 2026 WL 1896142, at *1 (holding § 1226(a) entitles a noncitizen to a bond hearing); *Zhakhonov v. Grant*, No. CIV-26-350-J, 2026 WL 1865418, at *3 (W.D. Okla. June 29, 2026) (holding it is unnecessary to reach a due process claim for a petitioner when "the proper remedy is an individualized bond hearing" under § 1226(a)) (citation modified); *see also Singh v. Grant*, No. CIV-26-279-J, 2026 WL 1035100, at *1-2 (W.D. Okla. Apr. 16, 2026) (declining to reach petitioner's due process claims and concluding burden shifting

---

*O.F.C.*, 2026 WL 74262, at *12 (while finding that due process does not require a pre-detention hearing, concluding "due process requires the Government to provide a prompt post-arrest hearing at which the individual can contest his detention and at which the Government bears the burden of proving by clear and convincing evidence the individual's dangerousness or risk of flight based on changed circumstances"). Judges in this District have not squarely addressed this issue. In *Singh v. Grant*, Judge Mitchell recommended the government be enjoined "from re-detaining [the] Petitioner without notice and . . . a pre-deprivation hearing before a neutral decisionmaker." *Singh*, 2026 WL 1099500, at *5. Adopting the report and recommendation, Judge Russell ordered "immediate release" but did not address what should happen after release. *Singh*, 2026 WL 1483557, at *3.

to the government in a § 1226(a) bond hearing is premature and not ripe for adjudication before a bond hearing has been conducted).

## V. Recommendation and Notice of Right to Object

For the foregoing reasons, the undersigned recommends that the Court **GRANT in part** the Petition for habeas relief by ordering Respondents to immediately release Petitioner subject to the conditions of his 2016 bond order and to enjoin Respondents from re-detaining him without notice and a pre-detention hearing before a neutral IJ.

The parties are advised of their right to object to this Report and Recommendation. *See* 28 U.S.C. § 636. Any objection must be filed not later than **August 11, 2026**. *See id.* § 636(b)(1); Fed. R. Civ. P. 72(b)(2). Failure to object timely waives the right to appellate review of the factual and legal issues addressed in this Report and Recommendation. *See Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991).

This Report and Recommendation disposes of all issues referred to the undersigned Magistrate Judge in this matter.

**ENTERED** this 4th day of August, 2026.

Chris M. Stephens

CHRIS M. STEPHENS
UNITED STATES MAGISTRATE JUDGE